De Witt *v.* Burnett.

---

---

Erie General Term, February, 1848.   *Hoyt, Mullett, and Marvin*, Justices.

## De Witt *vs.* Burnett.

A statute of one state cannot create a lien on, or appropriate, property in another state, nor provide any mode of proceeding, which will give such an effect to an extra-territorial transaction.

The statute of Ohio, providing for the collection of claims against steamboats and other water craft, and authorizing proceedings against them by name, passed Feb. 26, 1840, *it seems* was intended to apply to claims accruing within that state ; and as well by its terms, as by the principles which govern the construction of all statutes, is applicable only to such claims.

Where a citizen of this state has a demand against the owners of a vessel, for supplies furnished here, but which demand is not a lien on the vessel, by our statutes, he cannot follow the vessel to Ohio, and seize and sell her for such demand under the statute of that state, and thereby divest the owner who purchased after the demand accrued but before the seizure, of his title to the vessel ; unless he is made a party to the proceeding in Ohio.

The judgment upon the proceedings against the vessel in Ohio in such case, is no evidence against the owner here, in an action brought by a purchaser of the vessel before seizure, to recover damages for his eviction by the seizure.

This was an action of covenant, tried at the Erie circuit in January, 1847, and was brought here by a bill of exceptions ; which shows, that on the 28th day of July, 1841, at Buffalo, Burnett, the defendant, sold and delivered to De Witt, the plaintiff, three-eighths of the brig Queen Charlotte, and gave the plaintiff a covenant by which he (Burnett) in consideration of one dollar to him in hand paid by the plaintiff, covenanted and agreed to pay off and discharge, within ten days from that

De Witt v. Burnett.

date, all debts, claims, and liens, then existing against the said brig, which had been contracted since the 17th day of May preceding, and that he would fully indemnify and save harmless the said plaintiff, from all damages, costs, and charges on account of such debts, claims or liens. Atwater & Williams, merchants in Buffalo, at that time had an account for supplies and provisions furnished for the brig while she was in Buffalo, at Burnett's request, and while he had possession of the brig; on which there was due about $97. This account not being paid, Atwater & Williams, in June, 1842, sent their demand to Ohio, and proceeded for the collection of it, against the brig, under a statute of that state, passed February 26, 1840, entitled "An act providing for the collection of claims against steamboats and other water craft; and authorizing proceedings against them by name." The proceedings in the court of common pleas of Cuyahoga county, Ohio, under the said act, resulted in a judgment in favor of Atwater & Williams against the brig by name, for $118,72 damages and costs. The plaintiff now seeks to recover of the defendant the amount of this judgment, upon the ground that it was a debt, claim, or lien against the brig, within the meaning of the said covenant, and against which the defendant was bound, by his said covenant, to indemnify the plaintiff. On the trial, the plaintiff proved the making of the covenant above set forth; that at the time of taking the covenant, he purchased three-eighths of the said brig, and took possession thereof, by his agent. He also produced in evidence exemplified copies of the said statute of Ohio, and of the proceeding and judgment against the brig, in the court of common pleas of Cuyahoga county. He then proved that Atwater & Williams, in 1841, traded together as partners in Buffalo, in the state of New-York; that between the 15th day of May and the fore part of July in that year, they furnished supplies for the brig, to the amount of nearly $200, and charged them to the vessel; that more than $100 of the account was made after the 17th day of May. That the defendant paid $100 on the account, which left a balance of about $97, which the defendant frequently promised to pay. That the

De Witt v. Burnett.

account was for articles furnished the brig, and were proper for her use. That the defendant was in possession of the vessel during the time the account was accruing. The defendant proved that during the month of July, 1841, the said brig constantly ran between Buffalo in the state of New-York, and Cleveland in the state of Ohio, going to and from each of those places, and that it usually took six days to perform a trip. The proof being closed, the defendant's counsel requested the judge to charge the jury upon several matters embracing the following propositions: (1.) That if the account of Atwater & Williams was a debt, claim, or lien against the brig, by the laws of this state, at the date of the said covenant, it ceased to be so when she left the state, which it was proved she did do in July, 1841, after the claim had accrued. (2.) That Atwater & Williams' claim having arisen in this state, it could not form the basis of proceedings in Ohio, under the statute of February 26, 1840. (3.) That if the judicial proceedings in Ohio did create a lien on the said brig, the lien did not attach until the vessel was seized under such proceedings, which was not till June, 1842, and therefore the lien was not an existing one, at the date of the covenant. (4.) That the proceedings of the court of common pleas in Ohio, as appears by the record, were void for the want of the preliminary proceedings to give the court jurisdiction over the subject matter of the suit, such as the oath of indebtedness, a statement of the plaintiff's claim, &c. as required by the statute. All which the judge refused to charge, and he instructed the jury, that the court of common pleas of Cuyahoga county, Ohio, being a court of general jurisdiction, the record was presumptive evidence of the regularity of its proceedings, to obtain jurisdiction of the particular case, and that the record was also *prima facie* evidence of the amount of Atwater & Williams' claim against the brig, though that fact was proved by other evidence. The judge therefore directed the jury to find a verdict for the plaintiff, for the amount of the judgment rendered in the Cuyahoga common pleas, against the said brig, with the interest thereon. To all which decisions, charges and directions, the counsel for the defendant excepted.

De Witt *v.* Burnett.

*B. L. Bessac,* for the plaintiff.

*S. G. Haven,* for the defendant.

*By the Court,* MULLETT, J.   It is not necessary to consider the first proposition upon which the judge was requested to charge the jury.   The plaintiff did not put his right to recover in the common pleas of Cuyahoga county, on the ground that Atwater & Williams' account was a lien on the brig, by the laws of this state; nor did he pretend that the courts of Ohio assumed to enforce this claim, as a lien under our statute.   It was not denied that if the account of Atwater & Williams ever was a lien under the laws of this state, it ceased to be so when the vessel left the state.   (1 *R. S.* 493, § 2.)   Nor does the defendant's third point include any proposition which answers the assumed principle upon which the plaintiff founds his right to maintain this suit.   He does not claim that the judicial proceedings in Ohio, *alone* created an original lien in favor of Atwater & Williams' claim, but that such claim was in existence at the date of the covenant, and was of such a nature that, by the remedial laws of Ohio, it could be enforced against the vessel, whenever she came within their jurisdiction, and was so enforced and the plaintiff thereby deprived of his title, or obliged to pay the judgment against the brig to relieve it.   The true object and meaning of the covenant undoubtedly was to guaranty to the plaintiff a good title to the brig, free from all existing incumbrances of the kind mentioned, and to indemnify him against such incumbrances.   The plaintiff, therefore, to maintain his action for a breach of the covenant, must prove that he had been damnified, that he had been legally evicted, or compelled to pay something, to save his vessel from the effect of some incumbrance covenanted against.   This renders it necessary to inquire whether the judicial proceedings in Ohio did, or could, legally divest or endanger the plaintiff's title to the brig, or in other words could damnify him.   These proceedings purported to be under a statute of that state, the first section of which is as follows : " Be it enacted by the general assembly of

the state of Ohio, that steamboats and other water craft, navigating the waters within or bordering upon this state, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor, in the building, repairing, furnishing or equipping the same, or due for wharfage ; and also for damages arising out of any contract for the transportation of goods or persons, or injuries done to persons or property by such craft, or for any damage or injury done by the captain, mate, or other officers thereof, or by any person under the order or sanction of either of them, to any person who may be a passenger, or hand on such steamboat, or other water craft, at the time of the infliction of such damage or injury." And by the second section of the said act, " any person having such demand may proceed against the owner, or owners, or master of such craft, or against the craft itself." There are other sections which point out more particularly the mode of proceeding against the craft itself; but the act makes no provision for giving any notice, actual or constructive, of the said proceeding against the vessel, to the owners or officers, or agents of the vessel, or any other person. The proceedings under this statute, are a suit against the vessel by name, commenced by attachment, in which she is named as defendant, and in which a default is taken against her by name, for not appearing, damages are assessed, judgment perfected, and execution issued against the vessel. The whole efficacy of the statute consists in personifying the vessel, and making her stand responsible in her own name for all claims of the character described, against the owner, master, mate, steward, consignee, or other agent having charge of the vessel. Read, Justice, in the case of *The Canal Boat Huron* v. *Simmons,* (11 *Ohio Rep.* 458,) says, " the mischief intended to be remedied was the difficulty in collecting debts due from owners of boats, for articles furnished for their use, and for the recovery of damages done to persons or property, by boats, and by the conduct of their crews. The difficulty of hunting up the owners of the boat, induced the legislature in all cases to substitute the boat in their stead, and to treat her, for the purposes of the suit, as a person, and to sell

---
De Witt *v.* Burnett.
---

her out to satisfy the judgment which might be recovered; and further to make the boat responsible for any injury done to any person, or property on board. The ease with which persons navigating our waters could escape legal process, avoid the payment of debts contracted for the use of the boat, and the impunity with which persons navigating them, could inflict injuries upon persons or property, the irresponsible character, oftentimes, of the officers and crew, the difficulty of obtaining names, and identifying persons, induced the legislature, wisely, to make the boat itself responsible for the payment of all debts, and the good conduct of the officers of the boat." Hitchcock, Justice, in the case of *The Steamboat Merchant* v. *Finley,* (10 *Ohio Rep.* 384,) expressly admits that under this statute, the boat is liable not only for contracts, but for torts, and may, in a proper case, be charged for an assault and battery, by one of her officers.

It does not appear to be judicially settled in Ohio, whether this claim against a vessel is to be regarded as a lien, or not. The statute is sometimes spoken of as merely giving a new remedy, and in other cases an effect is given to the claim, by the statute, very similar to a lien.

Wood, Justice, in the case of *The Steamboat Waverly* v. *Clements,* (14 *Ohio Rep.* 28,) delivering the opinion of the court, says, " It is certainly unnecessary to decide whether the liability of the boat, for debts contracted on her account, is strictly to be regarded as a lien or not in the present case. The statute makes the boat liable for such debts, and creates her an artificial person, and authorizes a suit against her by name, to enforce that liability. Under such circumstances, it is clear to us, that a purchaser with notice of such pre-existing liability, does not take the boat discharged from the debt." And in that case, it was decided that a purchaser of a steamboat, with notice of a debt created on account of the boat, by a prior owner, took the boat subject to such debt, and that the boat might be seized and sold by the creditor, in the hands of such purchaser, with notice.

In the case of *Paul Jones and others* v. *The Steamboat*

*Commerce,* (14 *Ohio Rep.* 408,) Burchard, Justice, in delivering the opinion of the court, says, "The statute gives no lien. The lien is created by the seizure under the provisions of the statute; if successively seized on several claims, the claims are to be satisfied successively, according to priority of seizures. And the court, in that case, held, that a judicial sale of a water craft, under the statute, vested in the purchaser the title, divested of all liability to be again proceeded against under the statute, for a claim existing at the time of such sale." In pronouncing the opinion, his honor remarked in substance, that the statute *only relates to the remedy,* and enables all persons having claims, &c. to proceed against the vessel, but gives a priority to the one who first seizes her, and enables him by a sale under such seizure, to give a title to the purchaser free from all other pre-existing claims.

In the case of *Kellogg and others* v. *Brennan and others,* (14 *Ohio Rep.* 72,) Hitchcock, Justice, in pronouncing the opinion of the court, remarks, "It seems to me that if we can ascertain the intention of the legislature, it is a matter of very little consequence whether, technically speaking, it be a lien or not. The act authorizes a suit to be commenced against the craft by name. In these cases the suit is not only commenced against her by name, but by the statute the identical craft is to be seized and sold to satisfy the debt or claim. It may not be technically a lien, but it is something which appropriates the property as effectually, if not more so, than ordinary liens." And in that case the court decided that a mortgagee of the craft had not a lien preferable to the claims of a creditor; especially if the craft is running for the joint interest of the owners and mortgagee.

If this claim under the statute is *not* a lien on the vessel before seizure, it is difficult to perceive how it can be set up against a *bona fide* purchaser, who purchased before seizure, and without knowledge of the pre-existing claim. I cannot find that such a question has been presented to the courts of Ohio. The case under consideration might have furnished one, and if the plaintiff has neglected to defend his own title,

or to call on his guarantor to do so, he has no right to com-plain. The damages which he has sustained are the result of his own negligence or collusion.

It, however, appears to me difficult to distinguish the rights claimed under this statute from a lien. Jacob defines a lien to be an obligation, tie or claim, annexed to, or *attaching upon any property*, without satisfying which such property cannot be demanded by its owners. By virtue of this statute the credi-tor's demand is made a claim annexed to, or attaching upon the particular vessel, in respect to which it accrued, and which must be enforced against that particular vessel; even if the person who incurred the liability had other vessels within the jurisdiction of the court at the time; a claim which the owner of the vessel cannot evade by a sale, and without satisfying which he cannot lawfully demand his property; a claim which attaches to the identical property by *operation of law*, and without the owner's consent, and which adheres to it, without any agreement on his part; even after it has gone into the hands of a subsequent purchaser; a claim for which the vessel stands *primarily liable* without resort to the debtor, and is seized, condemned and sold, in a suit in which the debtor is not named; a claim, to enforce which, the proceedings are *in rem*, which is the peculiar consequence of a lien, and in the language of his honor, Justice Hitchcock, if it be not a lien, it is something which appropriates the property as effectually, if not more so, than ordinary liens. Whatever the claim may be called, its effect depends upon the statute which created it. If it be a lien, it is a lien created by statute. If it appropriates the property, it does so by virtue of the statute of the state of Ohio, which statute cannot have an extra-territorial power or operation. It cannot create a lien on, or appropriate any prop-erty beyond the jurisdiction of the state whose law it is. (*Story on Conflict of Laws*, 3d ed. §§ 539, 546, 547.) This is a plain elementary principle, and in this country of constitutional gov-ernments and written laws, cannot require arguments or refer-ences for its support.

We do not presume to question the power of the legislature

De Witt v. Burnett.

of Ohio, in its discretion, to make laws binding on the people
and property of that state, or on all subjects, property and peo-
ple within its jurisdiction; nor its right to prescribe for their
courts such *remedial* laws, as they may think proper. Neither
do we feel ourselves authorized or inclined to criticise the pro-
priety and wisdom of such laws; but we cannot concede to
them the power of extending the provisions of their laws to
persons, property and transactions within this state; nor recog-
nize here any right or title derived from any proceeding which
will have that effect, whatever it may be called. The distinc-
tion is between a law creating a right and a law giving a rem-
edy for the violation of a right. Every state must have ex-
clusive jurisdiction over its own remedial laws, and may, there-
fore, provide for the commencement of suits for the collection
of debts, by the attachment of property, as is done in several
of the states; but these attachments are only process in a suit
against the debtor, and are not founded on any specific claim
or lien on the property attached, as the proceedings in Ohio
were. As the claim of Atwater & Williams accrued in this
state, while the defendant and the brig were here, the whole
transaction is to be construed by the laws of this state. If the
debt was not a lien upon, or claim against the brig here, when
she was sold to the plaintiff, neither the statutes of Ohio, nor
any proceeding in her courts, could give it that effect. And
the proceedings *in rem* under the statute of Ohio, founded upon
such claim, could not divest the plaintiff's title to the brig, or
damnify him, so as to give him a right to resort to the defen-
dant, on his covenant of indemnity. Nor is it probable that
the suit in Ohio would have resulted in the condemnation of
the brig in the hands of a subsequent purchaser, had the suit
been defended. It is not presumed that the people or courts of
Ohio claim to give to their statute an extra-territorial jurisdic-
tion or power, although this case shows that our own citizens
have attempted to use it for that purpose. It is true that At-
water & Williams' demand appears to have been just and fair,
and one of a character which perhaps might have been a lien
on the brig by the laws of this state; but if it had been for an

De Witt v. Burnett.

assault and battery committed by Captain Burnett on board the brig, while lying in Buffalo creek, they could have pursued the same course to enforce it, with the same propriety, and probably with similar success. Nobody would be prepared to advocate this conclusion. I think the defendant's second point as above stated was clearly right; that it embraced the true law of the case, and that his honor the circuit judge ought so to have instructed the jury; and that he erred in refusing to do so.

The defendant's fourth point contains several objections to the record of the proceedings to seize and sell the said brig, in the common pleas of Cuyahoga county, Ohio, which purported to be the record of a judgment in favor of Atwater & Williams, against the brig Queen Charlotte, in an action of assumpsit. Some of these objections relate to the apparent want of the proper preliminary proceedings, to give the court jurisdiction over the subject matter of the suit. I do not propose to consider such objections; for believing, as I do, that the judgment of the common pleas of Cuyahoga county could not be received as evidence in this suit, to prove any thing against the defendant, I shall confine myself to the investigation of that proposition. Nor do I intend now to inquire into the general effect of a judgment of a foreign state, in a proceeding *in rem* upon the title of the property proceeded against. This action was brought to enforce a claim against the defendant personally. It was an ordinary action for the breach of a covenant. The judgment of the common pleas was introduced to prove, not only the breach of the covenant, but also to prove the amount of the damages sustained by the plaintiff, by reason of such breach. The defendant was not a party to the suit in which the judgment was rendered. There is no evidence that he appeared in the suit, or that he had any notice actual or constructive to appear and defend, or of the existence of the suit. In such a case, the judgment could not bind him personally, even in the state where it was rendered. This principle is not peculiarly applicable to the judgments of foreign courts. It is founded on general principles of jurisprudence. It at once de-

mands the assent of common sense and common honesty, which unite in declaring that no man shall be condemned without an opportunity of being heard in his defence. The judicial systems of all the states in the union, and it is presumed throughout the civilized world, bear evidence of the universal recognition of this principle.

For the rule as an elementary principle, reference may be had to 1 *Greenl. Ev.* §§ 522, 523, 541 ; *Story on Conf. of Laws,* 3d ed. §§ 539, 546, 547, 586 to 590; 1 *Sumner's Rep.* 607. For the early and constant recognition of the principle by the courts of New-York, in relation to the judgments of other states, when the defendant did not appear in the suit, reference may be had to 5 *John. Rep.* 41 ; 8 *Id.* 86, 197 ; 8 *Cowen's Rep.* 311 ; 5 *Wend. Rep.* 148 ; 6 *Id.* 447.

From this short examination I am confirmed in the opinion that the record of the Cuyahoga common pleas, although received without objection to its form, or the manner of its verification, was not evidence against the defendant of any fact involved in the suit, and that his honor, the circuit judge, erred in his instruction to the jury on that point. For the above reasons I think the verdict must be set aside, and a new trial granted, with costs to abide the event of the suit.(*a*)

New trial granted.

(*a*) In the case of *Lewis, trustee of Houlton,* v. *Gardner,* recently decided in the Baltimore county court, and reported in the *Am. Law Journal, vol.* 1, *N. S. p.* 294, it was held that the laws of a state have no extra-territorial operation, even between citizens thereof, so as to authorize the trustee, under an insolvent law of one-state, to recover the personal property of the insolvent, situate and sold in another, in payment of a debt. Chancellor Kent says there is no doubt of the truth of the general proposition, that the laws of a country have no binding force beyond its territorial limits; and that their authority is admitted in other states, not *ex proprio vigore,* but *ex comitate.* (2 *Kent's Com.* 457.) See also *Johnson* v. *Hunt,* (23 *Wend.* 87.)